1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   MARVETIA LYNN RICHARDSON,
    LATOYA NORMAN, SAMONIA NELSON-
10  CALIP and LAMONA NELSON as guardian          No. C 08-03470 JSW
    ad litem for "KC," a minor,
11
             Plaintiffs,
12                                               **ORDER DENYING**
    v.                                           **DEFENDANTS' MOTION FOR**
13                                               **PARTIAL SUMMARY**
    CITY OF ANTIOCH, CITY OF ANTIOCH             **JUDGMENT AND GRANTING**
14  POLICE DEPARTMENT, POLICE CHIEF              **PLAINTIFFS' MOTION FOR**
    JAMES HYDE, OFFICER SANTIAGO                 **PARTIAL SUMMARY**
15  MARTINEZ, JR, OFFICER JASON                  **JUDGMENT**
    VANDERPOOL, OFFICER JASON
16  JOANNINDES, SGT. THOMAS
    FUHRMANN and DOES 1-100, inclusive,
17
             Defendants.
18
    _____/
19

20

21          This matter comes before the Court upon consideration of the motion for partial

22  summary judgment filed by Defendants City of Antioch, City of Antioch Police Department,

23  Police Chief James Hyde, Officer Santiago Martinez, Jr, Officer Jason Vanderpool, Officer

24  Jason Joannindes, Sgt. Thomas Fuhrmann and Does 1-100, inclusive (collectively

25  "Defendants") and the cross motion for partial summary judgment filed by Plaintiffs Marvetia

26  Lynn Richardson, Latoya Norman, Samonia Nelson-Calip and Lamona Nelson, as guardian ad

27  litem for "KC," a minor (collectively "Plaintiffs").  Having considered the parties' pleadings,

28  relevant legal authority,  the Court HEREBY DENIES Defendants' motion for partial summary

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  judgment and GRANTS Plaintiffs' cross motion for partial summary judgment.

2                              **BACKGROUND**

3           On July 18, 2008, Plaintiffs filed their complaint alleging violations of 42 U.S.C. § 1983

4  against the City of Antioch, the Antioch Police Department and individual officers.  Plaintiffs

5  claim that Defendants violated their rights, specifically:  (1) Fourth Amendment rights to be

6  secure from unreasonable search and seizure, not to be subjected to excessive force during the

7  course of an arrest, and the right not to be retaliated against for asserting Fourth Amendment

8  rights; (2) Fourteenth Amendment rights not to be deprived of due process of law or the equal

9  protection of the law; (3) retaliation against Plaintiff Richardson for exercising her rights

10 guaranteed under the First Amendment; (4) conspiracy to deprive Plaintiffs of the rights and

11 privileges secured by the Constitution; (5) negligent failure to prevent the deprivation of

12 Plaintiffs' rights; (6) discrimination; (7) assault; (8) battery; (9) false arrest; (10) intentional

13 infliction of emotional distress; (11) violation of California Civil Code § 51.7; (12) violation of

14 California Civil Code § 52.1; and, (13) negligent hiring, training and retention by Defendants

15 City of Antioch, City of Antioch Police Department and Police Chief Hyde.  The City's liability

16 for these actions is premised on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

17         Plaintiffs' claims arise from an incident that occurred in the early morning of June 7,

18 2007.  On that date just before 1:00 a.m., the tenants living at 1947 Mokelumne Drive in

19 Antioch, California, called the police department to complain about noise in the house.

20 (Declaration of James V. Fitzgerald ("Fitzgerald Decl."), Ex. S (Declaration of Jason

21 Vanderpool) at ¶ 2.)  Several guests, including children, were staying with Plaintiff Marvetia

22 Lynn Richardson ("Richardson"), an inspector with the San Francisco Police Department.

23 (Declaration of Marvetia Lynn Richardson ("Richardson Decl.") at ¶¶ 2, 10; Declaration of

24 Samonia Nelson ("Nelson Decl.") at ¶ 4; Declaration of KC ("KC Decl.") at ¶ 5; Declaration of

25 Latoya Norman ("Norman Decl.") at ¶ 2; Declaration of Nolan Satterfield ("Satterfield Decl.")

26 at ¶ 3.) Richardson, an African-American woman, owned the home in a predominantly White

27 neighborhood in Antioch.  (Richardson Decl. at ¶ 3.)  On March 31, 2007, Richardson had

28 served her upstairs tenants with a 30-day notice to quit and the tenants had contacted the police

                                        2

1    numerous times complaining about their alleged treatment in the house.  (*Id.* at ¶¶ 5-9.)  None

2    of the previous visits had resulted in any further action.  However, on June 7, 2010, the Antioch

3    police responded to the tenants' 911 call to find the house filled with Richardson's guests:

4    Latoya Norman, Ms. Norman's three young children who were three, five and eight, a family

5    friend named Nolan Satterfield, Samonia Nelson, Richardson's girlfriend and her two

6    daughters, who were six and fourteen, as well as a teenage cousin.  The children and adults,

7    with the exception of Richardson, were planning to go to Six Flags/Marine World the next

8    morning.  (Richardson Decl. at ¶ 11; Nelson Decl. at ¶¶ 4, 5; Norman Decl. at ¶¶ 2, 3;

9    Satterfield Decl. at ¶ 3.)

10           Responding to the 911 call citing a fight or disturbance, the police arrived at the house at

11   approximately 1:09 a.m.  (Fitzgerald Decl., Ex. C; Ex. D (Declaration of Santiago Martinez) at

12   ¶ 3.)  The officers knocked on the door, were let in by one of the house guests, and witnessed

13   the hostility between the house guests and the tenants.  (*Id.*, Ex. D at ¶ 3; Declaration of

14   Quinton B. Cutlip ("Cutlip Decl."), Ex. 5 (Deposition of Jason Vanderpool) at 55:17-57:18.)

15   Richardson was asleep in her bedroom at the time.  (Richardson Decl. at ¶¶ 10-13; Norman

16   Decl. at ¶¶ 5, 7.)  The tenants complained that the guests, who were strangers to them, were

17   making loud noises, preventing them from going to sleep, and threatening them.  (Cutlip Decl.,

18   Ex. 5 at 58:14-25; 65:13-23.)  At that point, one of the guests woke up Richardson who

19   confirmed that the people in her home were indeed her invited guests.  (Richardson Decl. at ¶

20   13.)  She also indicated that Nelson was her girlfriend.  After an unpleasant exchange of words

21   with the officers, Richardson requested that the officers leave her home and not return without a

22   warrant.  (Cutlip Decl., Ex. 5 at 68:21-69:17.)

23           After approximately five to ten minutes, the officers left the house, believing the

24   incident to be resolved.  (*Id.*, Ex. 11.)  After the police left, Richardson asked her guests to shut

25   everything down and go to bed as it was late and she wanted no further disturbances.

26   (Richardson Decl. at ¶ 14.)  The officers walked across the street and, after talking for about

27   five minutes by their cars, heard loud noises from the house and heard someone yell, "call the

28   police."  (Cutlip Decl., Ex. 5 (deposition of Santiago Martinez) at 89:2-20; Ex. 6 at 114:3-22.)

United States District Court

For the Northern District of California

1    At that point, the officers called for a supervisor and the tenants ran out of the house.  (*Id.*, Ex. 6

2    at 115:8-12; 117:13-21.)

3            The tenants left the house at 1:24 a.m. and were visibly upset.  After calming them

4    down, Officer Martinez started the audio recorder in his shirt pocket which recorded the rest of

5    the incident.  (Cutlip Decl., Ex. 6 at 134:16-21.)  The tenants stated that the house guests had

6    entered their room and threatened them and that they were scared.  (Fitzgerald Decl., Ex. D at ¶

7    9.)  After the tenants left the home, it was relatively quiet from inside the house.  (Cutlip Decl.,

8    Ex. 1; Ex. 11 at 16.)  The officers asked the tenants for their version of events and inquired

9    whether there might be firearms in the house due to Richardson's position as a police officer.

10   (Fitzgerald Decl., Ex. I at 1-7.)  The officers began to knock at the door to gain entry, but heard

11   the house guests inside deny them access.  (Cutlip Decl., Ex. 11 at 16; Fitzgerald Decl., Ex. G at

12   3.)  The police thought they heard a vacuum cleaner start running in the house.  (Cutlip Decl.,

13   Ex. 1; Fitzgerald Decl., Ex. G at 3.)[1]

14           After the officers investigated whether there was another way into the house, spoke with

15   the tenants, and knocked and announced several times, did they decide to enter the home

16   without a warrant.  (Cutlip Decl., Ex. 1.)  The entry was made at 1:50 a.m., approximately 26

17   minutes after the tenants left the home.  (*Id.*)  Upon entry, the police tried to gather the house

18   guests in one room.  The audio tape of the incident reveals that the officers yelled at KC to

19   wake up three times and to get up four times in rapid succession.  (*Id.*)  After 25 seconds, during

20   which time KC was unresponsive, Officer Martinez ordered her arrested for "pretending to be

21   asleep."  (*Id.*; Ex. 6 at 163:14-164:15; 221:15-222:18.)  There is evidence that Latoya Norman

22   complained about being handled roughly by the officers and Richardson was tased in her home.

23   (Fitzgerald Decl., Ex. G; Norman Decl. at ¶ 25; Richardson Decl. at ¶¶ 15-18 .)

24           The Court shall address additional facts as necessary in the remainder of this order.

25

26

27   _____

28           [1]  Given the timing, the sound the officers heard was instead most likely an air
     mattress being inflated.  (Norman Decl. at ¶¶ 19-20; Satterfield Decl. at ¶ 19.)  However, the
     officers outside presumed it was a vacuum cleaner.

United States District Court
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2 **A.**    **Legal Standards Applicable to Motions for Summary Judgment.**

3          Summary judgment is proper when the "pleadings, depositions, answers to

4 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5 genuine issue as to any material fact and that the moving party is entitled to judgment as a

6 matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

7 for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

8 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.

9 *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the

10 evidence or make credibility determinations, and is required to draw all inferences in a light

11 most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

12 1997).

13          A principal purpose of the summary judgment procedure is to identify and dispose of

14 factually unsupported claims. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986).  The

15 party moving for summary judgment bears the initial burden of identifying those portions of the

16 pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

17 material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

18 trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

19 the moving party.  *Id.*  Once the moving party meets this initial burden, the non-moving party

20 must go beyond the pleadings and by its own evidence "set forth specific facts showing that

21 there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party must "identify

22 with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

23 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

24 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

25 genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving

26 party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

27

28

**B.      Fourth Amendment Claims Relating to the Warrantless Entry.**

Both parties move for summary judgment regarding whether the Officer Defendants' second, warrantless entry was lawful.  The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); U.S. Const. amend. IV.  The ultimate test of reasonableness requires the court to balance the governmental interest that justifies the intrusion and the level of intrusion into the privacy of the individual.  *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996).  Overnight guests are afforded the same protections under the Fourth Amendment as owners of the home.  *Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990).  It is well established that "'searches and seizures inside a home without a warrant are presumptively unreasonable.'"  *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)).  The presumption, however, is not irrebuttable.  *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009).  Exceptions are "narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home."  *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).

"There are two general exceptions to the warrant requirement for home searches: exigency and emergency."  *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).  The "'emergency' exception stems from the police officers' 'community caretaking function' and allows them 'to respond to emergency situations' that threaten life or limb; this exception does '*not* [derive from] police officers' function as criminal investigators.'"  *Hopkins*, 573 F.3d at 763 (citing *United States v. Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000) (emphasis added).)  "By contrast, the 'exigency' exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is 'necessary to prevent ... the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'"  *Id.* (citing *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)).  It is a also well-

6

1   settled exception to the warrant requirement that an "individual may waive his Fourth

2   Amendment rights by giving voluntary and intelligent consent to a warrantless search of his

3   person, property, or premises."  *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000),

4   *cert. denied,* 531 U.S. 1174 (2001).

5        Because it is undisputed that the Defendant Officers entered Richardson's home for the

6   second time without a warrant, unless a recognized exception to that requirement justifies their

7   entry, Plaintiffs can establish the violation of a constitutional right.

8        **1.      The Officers Did Not Have Valid Consent to Enter.**

9        It is clear that an individual may waive his Fourth Amendment rights by giving

10   voluntary and intelligent consent to a warrantless search.  *See id.*; *see also Ohio v. Robinette*,

11   519 U.S. 33, 40 (1996).  In *Georgia v. Randolph*, the Supreme Court reiterated this rule: "The

12   Fourth Amendment recognizes a valid warrantless entry and search of premises when police

13   obtain the voluntary consent of an occupant who shares, or is reasonably believed to share,

14   authority over the area in common with a co-occupant who later objects to the use of evidence

15   so obtained."  547 U.S. 103, 106 (2006) (citations omitted).  The Court, however, also held that,

16   as between a wife's consent to a search of the family residence and her husband's refusal to

17   consent, "a physically present co-occupant's stated refusal to permit entry prevails, rendering

18   the warrantless search unreasonable and invalid as to him."  *Id.*  The cooperation of one

19   occupant "adds nothing ... to counter the force of an objecting individual's claim to security

20   against the government's intrusion into his dwelling place."  *Id.* at 115.

21        Here, there is no dispute that the tenants gave their consent to enter the house, but the

22   guests and the homeowner herself refused to give their consent.  Richardson had previously

23   informed the Officers that they should not enter her home without a warrant.  There is no

24   dispute that her house guests reiterated that position when the Officers began to knock and

25   announce their presence.  There is no dispute that the Officers heard the occupants deny them

26

27

28

7

admission and reiterate the need for a warrant to enter.[2]  According to the explicit holding in

*Randolph*, the tenants' consent, counter to the other occupants' objections to the entry, does not

qualify as a exception to the warrant requirement under the Fourth Amendment.  *See id.*

### 2.    Emergency and/or Exigency Exception.

The Defendant Officers rely primarily on the emergency and/or exigency exceptions to

the warrant requirement to assert they were justified in entering Richardson's home.

Defendants argue that they were confronted by a "series of grave issues" and an "alarming

situation" which "led them to objectively and reasonably believe that they needed to enter

Richardson's home (1) to arrest certain felony suspects inside Richardson's home based on

probable cause, consent and exigent circumstances, and (2) to prevent violence and restore

order based on an emergency situation that required their immediate response."  (Motion at 10.)

Accordingly, without valid consent from the occupants of the home, the Defendant Officers rely

on the need to prevent violence based on the emergency exception to the warrant requirement

and the need to arrest and prevent escape of the felony suspects and to prevent the destruction

of evidence based on the exigency exception to the warrant requirement.

### a.    Emergency doctrine.

Under the emergency doctrine, "law enforcement must have an objectively reasonable

basis for concluding that there is an immediate need to protect others or themselves from

serious harm."  *United States v. Snipe*, 515 F.3d 947, 951-52 (9th Cir. 2008).  An action is

considered reasonable under the Fourth Amendment, "regardless of the individual officer's state

of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'"  *Brigham City,*

*Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 12, 138

(1978) (emphasis added)).  The officer's subjective motivation is irrelevant.  *Id.* (citations

omitted).  The court is tasked with making the determination "whether or not the emergency

---

[2]  In addition, Defendants' repeated assertion that Plaintiffs' non-compliant behavior – their refusal to open the door without a warrant – does not constitute grounds for the search.  *See, e.g., People v. Wetzel*, 11 Cal. 3d 104, 109 (1974) ("[R]efusal to consent to a request to enter [an] apartment ... cannot constitute grounds for a lawful arrest or subsequent search and seizure.")  Defendants may not use the fact that Plaintiffs asserted their Fourth Amendment rights as justification for the subsequent deprivation of those very same rights.

United States District Court

For the Northern District of California

exception applies in any given situation based on the totality of the circumstances, and, as with other exceptions to the warrant requirement, the Government bears the burden of demonstrating that the search at issue meets those parameters." *Stafford*, 416 F.3d at 1074.

Here, the Defendant Officers contend that they were faced with a set of circumstances that, taken all together, created an objectively reasonable basis for concluding there was an immediate need to protect others from serious harm. (*See* Fitzgerald Decl., Ex. D (Martinez Decl.) at ¶¶ 13, 14; Ex. I (Fuhrmann Decl.) at ¶¶ 7, 10; Ex. L (Fuhrmann Depo.) at 132:14-22; Ex. S (Vanderpool Decl.) at ¶¶ 9, 11.[3]) The Officers argue that they understood from the alleged tenant victims that there were adults in the home who had threatened their lives, that there were children in the home, and lastly, that due to her position as a police officer, Richardson may have had access to a firearm. There are no disputes of material fact about the circumstances the officers faced. Having carefully reviewed the record as well as listened to the contemporaneous recording of the incident, the Court concludes that, given the totality of the circumstances, there was no immediate need to protect anyone from harm. The alleged victims were outside the home, safely in the company of the police. The children in the home had been previously identified as the homeowners' guests. There were no sounds of threats of violence or continuing danger emanating from the house. Furthermore, the time that elapsed from the tenants' exit until the police officers entered the home was 26 minutes, evidence which counters the police officers' opinions that danger was imminent. The danger, if any, had long since dissipated and there was not any present danger manifest which objectively necessitated the forceful intrusion into the home without a warrant.

In *Brigham City,* the Court found that the police made a lawful entry when they could see the forceful restraint of a minor, violence perpetrated against someone who was spitting up blood, and the officers' efforts to knock and announce could not be heard due to the loud party going on at the residence. 547 U.S. at 403. However, in this matter, the only alleged victims

---

[3] The court notes Plaintiff's evidentiary objections. To the extent the Court relies on the evidence Plaintiffs object to, the objections are overruled. Whether or not a true reflection of the events, the declarations are admissible to show the Officers' perceptions of the totality of circumstances.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    were safely outside with the police and the officers took an additional 26 minutes to kick in the

2    door of an otherwise silent home.  Here, the Court finds that the Defendant Officers have failed

3    to meet their burden of demonstrating, based on the facts viewed in the light most favorable to

4    them, that the emergency exception applies based on the totality of the circumstances.  *See*

5    *Stafford*, 416 F.3d at 1074.

6                            **b.      Exigent Circumstances.**

7            In the alternative, the Defendant Officers contend that the entry was justified in order to

8    investigate a crime under the "exigent circumstances" exception to the warrant rule.  Exigent

9    circumstances obviating the requirement of a warrant can include "the need to assist persons

10   who are seriously injured or threatened with such injury."  *Brigham City,* 547 U.S. at 403.  "The

11   need to protect or preserve life or avoid serious injury is justification for what would be

12   otherwise illegal absent an exigency or emergency."  *Mincey v. Arizona*, 437 U.S. 385, 392

13   (1978).  Accordingly, "law enforcement officers may enter a home without a warrant to render

14   emergency assistance to an injured occupant or to protect an occupant from imminent injury."

15   *Brigham City*, 547 U.S. at 403 (citing *Mincey*, 437 U.S. at 392).

16           The exigency exception applies where police have probable cause and where "a

17   reasonable person [would] believe that the entry ... was necessary to prevent physical harm to

18   the officers or other persons.'"  *See LaLonde,* 204 F.3d at 956 (citing *McConney*, 728 F.2d at

19   1199) (holding that a warrantless entry may be justified when "the officers have probable cause

20   *and* are presented with exigent circumstances."); *see also United States v. Prescott*, 581 F.2d

21   1343, 1350 (9th Cir. 1978) ("[A]bsent exigent circumstances, police who have probable cause

22   to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the

23   arrest.").  Exigent circumstances have been defined as an emergency situation requiring swift

24   action to prevent physical harm to persons, serious property damage, the escape of a suspect, or

25   destruction of evidence.  *People v. Ramey*, 16 Cal. 3d 263, 276 (1976); *see also McConney*, 728

26   F.2d at 1199 (holding that exigent circumstances can also include "the destruction of relevant

27   evidence.").  "There is no litmus test for determining whether such circumstances exist, and in

28   each case the claim of an extraordinary situation must be measured by the facts known to the

1    officers." *Id.* Again, the subjective motivations of the individual officers have no bearing on

2    whether a particular seizure is considered reasonable under the Fourth Amendment. *See*

3    *Brigham City*, 547 U.S. at 404.

4          As the Court has already found, there was no exigency based on an imminent emergency

5    as any imminency had dissipated by the passage of time, the security of the alleged victims, and

6    the absence of any continuing danger or even apparent threat of danger. However, the

7    Defendant Officers also claim that the warrantless entry was necessary to prevent the possible

8    escape of unidentified suspects or the destruction of evidence. (*See* Fitzgerald Decl., Ex. D

9    (Martinez Decl.) at ¶ 13; Ex. I (Declaration of Thomas Fuhrmann) at ¶¶ 9, 10; Ex. L

10   (Deposition of Thomas Fuhrmann) at 135:23-136:21.) To the extent there was a valid fear that

11   any suspects could escape, there is no dispute that there were four uniformed police officers

12   present, each of whom could have guarded the perimeter of the home. Further, the officers'

13   claim that they reasonably feared the destruction of evidence is not tenable. The alleged penal

14   violations at issue here concerned the making of threats to the tenants, for which there would be

15   no physical evidence. Second, to the extent that the sound of the air mattress being inflated,

16   which the officers mistook for a vacuum cleaner, alerted the officers that debris was being

17   cleaned up, there is no reasonable basis to presume the possible debris was consequential

18   evidence or that its being moved was significant. Should there have been a destroyed door to

19   the tenants' room, that would have been sufficient evidence of an attack and moving any dust or

20   debris from the floor to the vacuum cleaner is inconsequential.

21         Based on the record of undisputed facts, the Court finds that there was no reasonable or

22   objective apprehension of exigency. Without consent, emergency or exigency, there no

23   cognizable exception to the warrant requirement permitting the Defendant Officers access to the

24   home without a valid warrant. Accordingly, the Court DENIES the Defendants' motion for

25   summary adjudication on the Fourth Amendment claim to be free from unreasonable search and

26   seizure and GRANTS Plaintiffs' motion for summary adjudication on the same claim.

27

28

**United States District Court**
For the Northern District of California

1

     **3.**     **Qualified Immunity.**

2          Defendants assert that they are qualifiedly immune from suit on Plaintiffs' Section 1983

3  claims.  The doctrine of qualified immunity protects government officials "from liability for

4  civil damages insofar as their conduct does not violate any clearly established statutory or

5  constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*,

6  457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to

7  hold public officials accountable when they exercise power irresponsibly and the need to shield

8  officials from harassment, distraction, and liability when they perform their duties reasonably."

9  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

10         Qualified immunity is "an entitlement not to stand trial or face the other burdens of

11  litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is an immunity from

12  suit rather than a mere defense to liability.  *Id.*  Accordingly, courts have repeatedly stressed

13  "the importance of resolving immunity questions at the earliest possible stage in litigation."

14  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).  Because qualified immunity is an

15  affirmative defense, the burden of proof initially lies with the official asserting the defense.

16  *Harlow*, 457 U.S. at 812.

17         In *Saucier v. Katz*, the Supreme Court stated that a court called upon to rule on the issue

18  of qualified immunity must ask the following threshold question: "Taken in the light most

19  favorable to the party asserting the injury, do the facts alleged show the officer's conduct

20  violated a constitutional right?"  533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S.

21  226, 232 (1991)).  "If no constitutional right would have been violated were the allegations

22  established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*

23  However, if the Court finds that the facts would show the violation of a constitutional right, the

24  next inquiry is to determine "whether the right was clearly established."  *Id.*  Thus, a court

25  "must determine whether the law governing the official's conduct was clearly established at the

26  time the challenged conduct occurred."  *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994)

27  (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)); *see also Blueford v.*

28  *Prunty*, 108 F.3d 251, 255 (9th Cir. 1997) (holding that the issue whether an aspect of law was

United States District Court
For the Northern District of California

1 clearly established must be determined as of the time of the alleged conduct at issue). The

2 Supreme Court in *Pearson v. Callahan* determined that the specific order of the qualified

3 immunity inquiry is not required and held that "judges of the district court and the courts of

4 appeals should be permitted to exercise their sound discretion in deciding which of the two

5 prongs of the qualified immunity analysis should be addressed first in light of the circumstances

6 in the particular case at hand." 129 S. Ct. at 818.

7      A constitutional right is clearly established for purposes of qualified immunity if "[t]he

8 contours of the right [are] sufficiently clear that [at the time the alleged unlawful action is

9 taken] a reasonable official would understand that what he is doing violates that right."

10 *Saucier*, 533 U.S. at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not

11 to say that an official action is protected by qualified immunity unless the very action in

12 question has previously been held unlawful ...; but it is to say that in the light of pre-existing

13 law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640. However, government

14 officials are not "charged with predicting the future course of constitutional law." *Ostlund v.*

15 *Bobb*, 849 F.2d 365, 371 (9th Cir. 1988).

16      A court should then address the question "whether, under that clearly established law, a

17 reasonable [official] could have believed the conduct was lawful." *Id.* This inquiry must be

18 undertaken in the light of the specific context of the case. *Saucier*, 533 U.S. at 194. In deciding

19 whether the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether

20 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he

21 confronted' ... or whether the state of the law [at the time] gave 'fair warning' to the officials

22 that their conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002)

23 (quoting *Saucier*, 533 U.S. at 202). Although the inquiry is undertaken in the specific context

24 of the case, the fact that no case has found a constitutional violation under the exact facts

25 alleged does not imply that the law is not clearly established. *Phillips v. Hust*, 477 F.3d 1070,

26 1079-1080 (9th Cir. 2007). When there is no specific, binding precedent on the exact question,

27 the Ninth Circuit looks "to all available decisional law, including the law of other circuits and

28 district courts." *Inouye v. Kemna*, 504 F.3d 705, 714 (9th Cir. 2007).

13

United States District Court

For the Northern District of California

1    Here, the Court has found that the Defendant Officers violated Plaintiffs' constitutional

2  rights to be secure in their persons and effects against unreasonable search and seizure under the

3  Fourth Amendment.  There is no question that the "searches and seizures inside a home without

4  a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 590).  Although the

5  presumption is not irrebuttable, the exceptions are "narrow and their boundaries are rigorously

6  guarded to prevent any expansion that would unduly interfere with the sanctity of the home."

7  *Stafford*, 416 F.3d at 1073.  From the record of undisputed facts presented to the Court, it is

8  clear that the situation did not require swift action to prevent the escape of a suspect, the

9  destruction of evidence, or to guard against physical harm to anyone, as the alleged victims

10  were safely outside with the police.  Therefore, neither the emergency nor the exigency

11  exceptions to the warrant requirement were satisfied.  Further, it is also clear from clearly

12  established precedent that valid consent was not obtained solely from the complaining tenants,

13  as the homeowner and the house guest occupants repeatedly refused to grant consent to enter

14  the home to the police officers.  Therefore, the Court finds the officers violated a constitutional

15  right and a reasonable official could not have believed, under clearly established law, that the

16  conduct was lawful.  *See Saucier*, 533 U.S. at 194.  Accordingly, the Court finds as a matter of

17  law that Defendant Officers are not entitled to qualified immunity for their illegal entry on June

18  7, 2007 and DENIES their motion for partial summary judgment on this ground.[4]

19  **C.    Remainder of Defendants' Motion for Summary Adjudication.**

20      **1.    Count Ten – False Arrest.**

21      Defendants move for summary adjudication on Plaintiffs' tenth cause of action for false

22  arrest for the arrests of Latoya Norman and Lamona Nelson.  Defendants contend that the

23  arrests based on the Penal Code for terrorist threats, vandalism and possession of stolen

24  property were valid and that Plaintiffs' claim for false arrest should be dismissed.  Plaintiffs

25  argue that the tenants' version of events was inherently unbelievable due to the numerous

26  ───────────────

27      [4]  The Court also DENIES Defendants' motion as it pertains to all claims related to
the issue of the entry: retaliation for asserting Fourth Amendment rights, conspiracy (42 U.S.
§ 1985(3)), negligent failure to prevent constitutional violation (42 U.S.C. § 1986),

28  discrimination (42 U.S.C. § 2000d), intentional infliction of emotional distress, and negligent
hiring/training.  (*See* Motion at 24.)

previous complaints about which the police officers were aware.  Because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim.  *See Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) ("In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." ).

### 2.       Count Two – Equal Protection Claim.

Defendants contend that there is no evidence that the police officers discriminated against Plaintiffs based on race or sexual orientation.  Plaintiffs contend that the police officers became discernably more rude after Richardson indicated that Samonia Nelson was her girlfriend.  Richardson also testified that the officers made racist comments, particularly about her ownership of the home, and behaved in a racist manner.  Again, because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim. *See id.*[5]

### 3.       Count Three – First Amendment Retaliation Claim.

Defendants contend that there is no evidence in the record to support the allegation that they retaliated against Plaintiff Richardson because of her speech or that the officers reacted to Richardson's previous admonitions to them to retrieve a warrant before entering her home. Plaintiff contends that the officers reacted to her admonitions negatively and retaliated against based on her speech.  Once again, because the Court cannot weigh the credibility of witnesses at summary judgment and finds the material facts are reasonably disputed, the Court DENIES the motion as to this claim. *See id.*

### 4.       Liability of Officer Jason Joannindes.

Defendants argue that the claims against Officer Jason Joannindes should be dismissed because there is no evidence that he directly participated in any of the alleged unlawful activity.

---

[5]  In the alternative, Defendants contend that Plaintiffs' substantive due process claim fails under the Fourteenth Amendment because of the "more-specific-provision" rule as set forth in *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Court finds this argument unpersuasive.  There remain claims in the complaint that exceed the scope of the Fourth Amendment claims.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    However, Plaintiffs allege that Officer Joannindes was at the residence, unlawfully entered the

2    home without a warrant, and was an "integral participant" in the alleged violations. *See Boyd v.*

3    *Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Plaintiffs further contend that Officer

4    Joannindes was involved in the treatment of Latoya Norman who pleaded for Defendants to be

5    careful with her previously injured arm. Due to the presence of disputed material facts, the

6    Court DENIES Defendants' motion as to Officer Joannindes.

7    **D.      Remainder of Plaintiffs' Motion for Summary Adjudication.**

8              **1.      No Probable Cause to Arrest KC.**

9              Plaintiffs contend that KC was arrested without probable cause in violation of the Fourth

10   Amendment. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

11   Fourth Amendment, provided the arrest was without probable cause or other justification."

12   *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) (citing *Larson*

13   *v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993)). The test for whether probable cause exists is

14   whether "at the moment of arrest the facts and circumstances within the knowledge of the

15   arresting officers and of which they had reasonably trustworthy information were sufficient to

16   warrant a prudent man in believing that the petitioner had committed or was committing an

17   offense." *United States v. Bernard,* 623 F.2d 551, 559 (1980) (internal quotation and citations

18   omitted). A determination as to whether probable cause exists requires a "practical, common-

19   sense" decision based on the totality of the circumstances, including the veracity, basis of

20   knowledge and reliability of the information provided by informants. *See United States v.*

21   *Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (citing *Illinois v. Gates,* 462 U.S. 213, 214 (1983)).[6]

22

23           [6] "In evaluating a custodial arrest executed by state officials, federal courts must
     determine the reasonableness of the arrest in reference to state law governing the arrest."
24   *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993). Under California law, probable
     cause to arrests exists when facts known to the arresting officer "would lead a man of
25   ordinary care and prudence to believe and conscientiously entertain an honest and strong
     suspicion that the person is guilty of a crime." *People v. Adams*, 175 Cal. App. 3d 855, 861
26   (1985). The test under California law "is very similar to the Fourth Amendment test applied
     by [the Ninth Circuit], which provides that '[p]robable cause exists when, under the totality
27   of the circumstances known to the arresting officers, a prudent person would have concluded
     that there was a fair probability that [the suspect] had committed a crime.'" *Peng v. Mei*
28   *Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (quoting *United States v. Buckner,* 179 F.3d
     834, 837 (9th Cir. 1999)).

16

United States District Court

For the Northern District of California

1    According to the uncontested facts in the record, KC was Richardson's house guest who

2  was staying the night with the plan to go to Great America in the morning with her family.  KC

3  was 14 years old at the time of the incident.  After the first visit from the police from

4  approximately 1:09 a.m. to 1:19 a.m., Plaintiffs shut down their activities for the evening and

5  put the children to sleep.  After the officers left the first time, KC and her cousin went into the

6  downstairs bedroom and went to bed.  At approximately 1:50 a.m., the police officers broke the

7  door down and entered the home.  The officers entered her room and announced their presence,

8  but KC remained under the covers and did not immediately get up when Officer Martinez

9  ordered her to "wake up."  The simultaneous audio tape of the incident reveals that 25 seconds

10  elapsed between the time the officer ordered her to wake up and the time he ordered her arrested

11  for allegedly pretending to be asleep.

12    The Court finds that the undisputed circumstances of KC's arrest fail to provide

13  sufficient facts to establish probable cause for a reasonable officer to order her arrest.  In

14  *Mackinney v. Nielsen*, the Ninth Circuit found that an arrest for a momentary refusal to

15  cooperate with police officers was insufficient to create adequate grounds for police intrusion.

16  69 F.3d 1002, 1006 (9th Cir. 1995).  In *Mackinney*, the plaintiff was only momentarily

17  noncompliant with the police officers' order to refrain from drawing on the sidewalk with chalk.

18  *Id.*  Similarly here, upon the police officers' entry into an otherwise quiet home, at nearly 2:00

19  in the morning, after children had been put to sleep at least thirty minutes earlier, the officers

20  arrested KC for "pretending to be asleep."  No more than 25 seconds elapsed from the time the

21  officers announced their presence in KC's bedroom and the time she was arrested for failing to

22  comply with their demands.  Just as the court found in *Mackinney*, although "people must obey

23  the police in most situations, ... the police overreacted to [plaintiff's] momentary disobedience."

24  69 F.3d at 1006.  Accordingly, the Court finds the arrest of KC was objectively unreasonable

25  and GRANTS Plaintiffs' motion for partial summary judgment on this claim.  Based on clearly

26  established precedent, the Court also finds that Defendants are not entitled to qualified

27  immunity for the arrest of KC.  *See Saucier*, 533 U.S. at 201.

28

**United States District Court**
For the Northern District of California

1        **2.**     **Cause of Action Under California Civil Code Section 52.1.**

2       California Civil Code Section 52.1 provides a private right of action for damages against

3  any person who "interferes [or] attempts to interfere by threats, intimidation, or coercion" with

4  the exercise or enjoyment of a legal right.  Section 52.1 requires "an attempted or completed act

5  of interference with a legal right, accompanied by a form of coercion."  *Jones v. Kmart Corp.*,

6  17 Cal. 4th 329, 334 (1998).

7       The Court has found that the entry into the house as well as the arrest of KC were

8  unconstitutional, the only issue is whether the entry and arrest were made attendant with threats,

9  intimidation or coercion.  The test is whether a reasonable person, standing in the shoes of the

10  plaintiff, have been intimidated by the actions of the defendants and have perceived a threat of

11  violence.  *See Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289-

12  1290 (9th Cir. 2001) (citing Judge Donna J. Hitchens & Robert D. Links, *California Civil*

13  *Proactice: Civil Rights Litigation* § 3:4).  From a review of the contemporaneous tape recording

14  of the incident, including the police officers' kicking in the front door, screaming at KC,

15  roughly handling Plaintiff Latoya Norman and using a taser on Richardson, it is clear that the

16  illegal entry and arrest of KC were made in the context of continuing coercive behavior by the

17  police officers.  It is clear from the tape that Plaintiffs were fearful and reasonably perceived a

18  threat of violence.  Defendants do not contend otherwise.  Accordingly, the Court GRANTS

19  Plaintiffs' motion for summary adjudication as to this count.

20                              **CONCLUSION**

21       For the foregoing reasons, the Court DENIES Defendants' motion for partial summary

22  judgment and GRANTS Plaintiffs' cross-motion for partial summary judgment.

23       **IT IS SO ORDERED.**

24

25  Dated:   July 13, 2010                      _Jeffrey S White_

26                                   _____
                                 JEFFREY S. WHITE
                                 UNITED STATES DISTRICT JUDGE

27

28